IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Charles David, Sr. and Stephanie David, )
his wife, )
 )
      Plaintiffs, )
 ) Civil Action No. 08-426
   vs. )
 )
Black & Decker (US) Inc., )
 )
      Defendant. )
 )

AMBROSE, Chief District Judge

# OPINION
# AND
# ORDER OF COURT

The factual and procedural details of this case are well known to the parties, and I need not repeat them in detail here. In short, this is a products liability case involving a Black & Decker circular saw owned by Plaintiff Charles David, Sr. Mr. David and his wife Stephanie David (collectively "Plaintiffs") seek damages from Defendant Black & Decker (US) Inc. ("Defendant" or "Black & Decker") stemming from injuries Mr. David received to his left hand while operating the saw on October 24, 2004. Plaintiffs argue that a design defect in the saw allowed the saw to accidentally energize, causing Mr. David's injuries.

Plaintiffs offer the expert testimony of Kai J. Baumann, P.E. ("Baumann"), a mechanical engineer, with respect to defective design and causation. In turn, Defendant offers the expert testimony of Dr. Gary Deegear ("Deegear"), a medical doctor with experience in biomechanics and injury causation involving power tools. Pending are Plaintiffs' Motion to Preclude Testimony of Gary Deegear (Docket No. 26) and Defendant's Motion to Exclude Testimony of Kai J. Baumann,

1

P.E. (Docket No. 28) based on Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and its progeny. I held a hearing on the motions on March 10, 2009 (Docket No. 39), and the parties submitted both pre- and post-hearing briefs and exhibits. (Docket Nos. 27, 29-33, 35-37, 40-41). After carefully considering the submissions of the parties and the evidence presented at the hearing, both motions are denied as set forth more fully below.

## I. Analysis

### A. *Daubert* Standard and Rule 702

In Daubert, the Supreme Court held that:

> [f]aced with a proffer of expert scientific testimony, ... the trial court judge must determine at the outset ... whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

509 U.S. at 592-93. More recently, in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999), the Supreme Court clarified any confusion regarding the intended reach of the Daubert decision, by declaring that the trial judge must perform this "basic gatekeeping obligation" to all expert matters, not just "scientific" matters. In the Third Circuit, the trial court's role as a "gatekeeper" announced in Daubert requires proof that: (1) the proffered witness is qualified as an expert; (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge; and (3) the expert's testimony must "fit" the facts of the case. In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-42 (3d Cir. 1994). Thus, pursuant to Daubert, the gatekeeping function requires the court to ensure that the expert testimony is both reliable and relevant. Daubert, 509 U.S. at 589; Kumho Tire Co., 526 U.S. at 147.

As to the first requirement - qualification - the Court of Appeals for the Third Circuit has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more general qualifications." Paoli, 35 F.3d at 741. "Rule 702's liberal policy of admissibility extends to

2

the substantive as well as the formal qualification of experts." Id. Thus, an expert can qualify based on a broad range of knowledge, skills, training and experience.

The second inquiry focuses on methodology. The inquiry into methodology is designed to ensure that an expert's opinions are based upon "'methods and procedures of science' rather than on subjective belief or unsupported speculation; the expert must have 'good grounds' for his or her belief." Id. at 742. Factors used to assess reliability may include whether: (1) the theory or technique can be tested; (2) the theory or technique has been peer reviewed; (3) there is a high rate of known or potential error; (4) there are standards or controls; (5) the theory is "generally accepted"; (6) there is a sufficient relationship between the technique and methods which have been established to be reliable; (7) the expert's qualifications are sufficient; and (8) the method has been put to non-judicial uses. See Magistrini v. One Hour Martinizing Dry Cleaning, 180 F. Supp. 2d 584, 594 (D.N.J. 2002), aff'd, 68 F. App'x 356 (3d Cir. 2003). "Some courts also consider additional factors relevant in determining reliability, including: (i) whether the expert's proposed testimony grows naturally and directly out of research the expert has conducted independent of the litigation . . . ; (ii) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. . . ; (iii) whether the expert has adequately accounted for alternative explanations . . . ; (iv) whether the expert is being as careful as he would be in his professional work outside of the litigation context . . . ; and (v) whether the field of expertise asserted by the expert is known to reach reliable results for the type of opinion proffered by the expert . . . ." Id. at 594-95 (citations omitted); see also Cuffari v. S-B Power Tool Co., 80 F. App'x 749, 751 (3d Cir. 2003) ("In short, trial courts should determine whether the expert's conclusion is based on valid reasoning and reliable methodology.").

Although this list of factors is lengthy, not each factor will be relevant to every reliability analysis. The "test of reliability is 'flexible.'" Kumho, 526 U.S. at 141. According to the Supreme Court, "Daubert's list of specific factors neither necessarily nor exclusively applies to all experts."

3

Id. The relevance of the Daubert factors depends "on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Id. at 150 (internal quotation marks and citations omitted).

Finally, Daubert and Rule 702 require that the expert's testimony "fit" the facts of the case. "'Fit' requires that the proffered testimony must in fact assist the jury, by providing it with relevant information, necessary to a reasoned decision of the case." Magistrini, 180 F. Supp. 2d at 595 (citing Paoli, 35 F.3d at 743).

### B. The *Daubert* Motions

Plaintiffs offer Baumann's testimony to support their claim that the circular saw at issue in this case was defectively designed. Specifically, Baumann opines that the subject saw was defectively designed and unreasonably dangerous because its trigger promotes inadvertent activation; the front handle has insufficient space to be held without inadvertently putting the index finger on the trigger; it has no trigger guard to protect against inadvertent finger contact with the trigger; and it has no "lock off" button to prevent inadvertent trigger operation. See Baumann Report at 4.

Defendant offers Deegear's testimony primarily to rebut Baumann's arguments and to opine as to causation. Among other things, Deegear concludes that Mr. David did not inadvertently reactivate the saw, but that he was injured when he placed his left palm up under the workpiece into either the powered or recently de-powered blade. Deegear Report ¶¶ 3-4. Deegear's report also supports Defendant's position that Mr. David's injuries were caused by his conscious disregard of several levels of design safety mechanisms and proper use techniques. Deegear further opines, inter alia, that, contrary to Plaintiffs' theory of defect, the saw's handle size and configuration allow for safe operation and that the user easily can move his finger off the trigger. Id. ¶¶ 5-6.

Both Plaintiffs and Defendant argue that I should exclude the opposing party's proposed

expert testimony under Daubert and its progeny.  After careful consideration of the Daubert hearing testimony, the parties' written submissions, and the other evidence of record, I disagree.

First, I find that by virtue of their educational backgrounds as well as professional and practical experience, both proposed experts are sufficiently qualified to testify as to the opinions set forth in their respective reports.  As the Court of Appeals for the Third Circuit repeatedly has instructed, Rule 702's policy of admissibility is a liberal one.  Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008) (citing Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997)). Moreover, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate."  Id (quoting Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996)).

Second, I find that the methodologies by which both Baumann and Deegear reached their conclusions are reliable and are not based solely on speculation or the mere *ipse dixit* of the expert. For example, among other things, Baumann examined the subject saw and exemplar saws; tested a saw substantially similar to the subject saw, including stopping time tests, observing switch operation, and blade coast down time; operated and evaluated the exemplar saw's trigger mechanism and compared trigger mechanisms on various other saws in the marketplace; took various relevant measurements; and used recognized data regarding human hand sizes to calculate handle sizes and trigger grip.[1]  Similarly, Deegear, inter alia, examined the subject saw and competitive saws; examined Mr. David's medical records and radiologic images in conjunction

---

[1] Defendant focuses a large portion of its argument on attacking Baumann's alleged opinion that UL Standard 45 allowing a 1/4 inch pre-travel is wrong.  As clarified at the hearing and in the briefs, however, Baumann's opinion does not appear to be that UL 45 is wrong, but that "[w]hile the pre-travel only switch allowable under the UL standard may be acceptable and safe on some circular saw, . . . it was not safe nor adequate on this particular saw in light of its other design characteristics."  Pls.' Supp. Br. (Docket No. 37 at 3-4).  To the extent Baumann testifies differently at trial, Defendant may raise appropriate objections at that time.  I express no opinion at this stage as to the merits of any such objection or as to the admissibility of UL 45 at trial.

with his prior research and experience regarding the cut on the bone as an indicator of the speed and stability of the interaction; attempted to reconstruct the accident as Mr. David described; and examined the fit and grip of the subject saw with a 99% male hand.[2]  Although both experts could have done more and their opinions may be vulnerable on cross-examination, this does not render their methodology patently unreliable.  As with the qualifications prong, "the standard for determining reliability is not that high, even given the evidentiary gauntlet facing the proponent of expert testimony under Rule 702."  In re TMI Litig., 193 F.3d 613, 665 (3d Cir. 1999).  Although "a litigant has to make more than a prima facie showing that his expert's methodology is reliable," the Court of Appeals for the Third Circuit has "cautioned that '[t]he evidentiary requirement of reliability is lower than the merits standard of correctness.'"  Pineda, 520 F.3d at 247 (quoting Paoli, 35 F.3d at 744).  Here, both Baumann and Deegear have done enough to satisfy the reliability prong.[3]

Third, each expert's proposed testimony as to design and/or causation largely will assist the trier of fact with respect to issues necessary to a reasoned determination of the case since these are the issues at the heart of Plaintiffs' complaint.[4]

---

[2] Plaintiffs object strongly to the fact that Deegear cites the accident reconstruction of another defense expert, Walter Painter, as support for his conclusions.  Plaintiffs dispute that Deegear collaborated with Painter on Painter's accident reconstruction (other than as to line of cut) and note that Deegear did not see Painter's accident reconstruction video until after he prepared his expert report.  Even disregarding Painter's report and the related video, however, my conclusions as to reliability do not change.  As set forth above, Deegear performed his own similar accident reconstruction as evidenced by numerous photographs attached to his initial brief.  Plaintiffs' complaints about the degree of interaction between Painter and Deegear go to the weight and credibility of Deegear's testimony and are better left for cross-examination at trial.

[3] As set forth above, the "test of reliability is 'flexible,'" and "Daubert's list of specific factors neither necessarily nor exclusively applies to all experts."  Kumho, 526 U.S. at 141.  Thus, the fact that Baumann and Deegear's methodology might not satisfy every Daubert factor does not render that testimony *per se* inadmissible or inadmissible in this case.

[4] With respect to Deegear, my findings regarding fit relate primarily to his opinions on design and/or causation as summarized on pages 15 and 16 of Defendant's post-hearing brief (Docket No. 36 at 15-16).  This list does not specifically mention Deegear's opinions in his report regarding the effects of pain relievers on perception, judgment, and reaction and the effects of nicotine on proper healing.  See Deegear Report ¶¶ 11-12.  It appears that these opinions would not be relevant unless a proper foundation is laid regarding Mr. David's pain reliever and/or nicotine use, if any, during the pertinent time periods.  It is premature, however, for me to rule on this issue at this stage of the litigation.  Plaintiffs are free to raise appropriate objections, if any, to such testimony at trial.

## II. Conclusion

In short, although neither Baumann nor Deegear is perhaps the "best" expert on the subjects at issue, their testimony is admissible under Rule 702 and the Daubert line of cases for the reasons set forth above. The parties' respective arguments in opposition to the proposed expert testimony go to credibility and weight, not admissibility, and properly may be raised on cross-examination or through other appropriate means at trial. Accordingly, both Daubert motions at issue are denied.[5]

---

[5] This Opinion holds only that the expert opinions at issue are not excludable under Daubert and Rule 702. Nothing herein shall preclude the parties from raising other objections at trial to specific testimony from Baumann or Deegear if any such objections apply.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| Charles David, Sr. and Stephanie David, his wife, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) | Civil Action No. 08-426 |
| vs. | ) |  |
|  | ) |  |
| Black & Decker (US) Inc., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

AMBROSE, Chief District Judge

## ORDER OF COURT

AND NOW, this 4th day of May, 2009, after careful consideration and for the reasons set forth in the accompanying Opinion, it is hereby ordered that Plaintiffs' Motion to Preclude Testimony of Gary Deegear (Docket No. 26) and Defendant's Motion to Exclude Testimony of Kai J. Baumann, P.E. (Docket No. 28) are DENIED.

It is FURTHER ORDERED that counsel attend a pretrial/settlement conference scheduled for Wednesday, May 13, 2009, at 12:00 p.m. before the undersigned in Courtroom 3B of the U.S. Post Office & Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania. Counsel shall have settlement authority, and parties are to be either present or available by telephone.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
Chief U.S. District Judge